```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF MISSISSIPPI
                          JACKSON DIVISION
```

STEPHEN RAY                                              PLAINTIFF

VS.                                   CIVIL ACTION NO. 3:08CV391TSL-JCS

NISSAN NORTH AMERICA, INC.                               DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Nissan North America, Inc. (Nissan) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Stephen Ray has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

Following his termination from employment with defendant on September 28, 2007, plaintiff Stephen Ray filed a charge of discrimination with the Equal Employment Opportunity Commission asserting he was terminated on account of his race, white. Specifically, he claimed that whereas he was terminated after incurring only 20 attendance points under Nissan's attendance policy, a similarly situated black employee, Eric White, was not terminated until he had accumulated 26 points.[1] Upon receiving his notice of right to sue, Ray filed the present action alleging

---

[1] Plaintiff also identified Karie Wright as a comparator but has now conceded that she is not an appropriate comparator.

race discrimination under Title VII and 42 U.S.C. § 1981, and a state law claim for intentional infliction of emotional distress.[2] Nissan has moved for summary judgment on each of plaintiff's claims. According to Nissan, plaintiff's race was not a factor in his termination, which was instead based solely on his violation of Nissan's attendance policy.

The framework for analysis of discrimination claims under Title VII/§ 1981 is well established:

> The plaintiff must establish a prima facie case that the defendant made an employment decision that was motivated by a protected factor. Once established, the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason. The burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination. But, if the defendant has offered a legitimate nondiscriminatory reason for its action, the presumption of discrimination derived from the plaintiff's prima facie case "simply drops out of the picture", and "the ultimate question [is] discrimination vel non".

Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1089–1090 (5th Cir. 1995) (citations omitted). A plaintiff's prima facie case of discrimination in a case involving a work rule violation consists of proof that the plaintiff (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) '"either ... did not violate the rule

---

[2]  Plaintiff filed his complaint in state court, but Nissan timely removed the case based on federal question jurisdiction.

2

or that, if [she] did, [black] employees who engaged in similar acts were not punished similarly'." See Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001); Mayberry, 55 F.3d at 1090 (quoting Green v. Armstrong Rubber Co., 612 F.2d 967, 968 (5th Cir.), cert. denied, 449 U.S. 879, 101 S. Ct. 227, 66 L. Ed. 2d 102 (1980)). Here, Nissan does not dispute that plaintiff can establish the first three elements of his prima facie case, but maintains that plaintiff cannot establish the fourth element because he cannot dispute Nissan's ample proof of his attendance infractions, and because plaintiff has no proof that he was treated less favorably than any employee outside his protected class. More to the point, it claims that Eric White, the sole comparator identified by plaintiff in support of his claim for disparate treatment, in not a proper comparator because the circumstances leading to his and plaintiff's terminations were materially distinct.

In support of its motion, Nissan has presented evidence explaining in detail how attendance violations are addressed by Nissan through progressive corrective action steps pursuant to Nissan's Corrective Action Guidelines. According to Jay Kerr, Senior Manager of Human Resources Business Partners, excessive absences, unapproved absences and other violations of Nissan's attendance policy can result in corrective action. Employees are given points when an absence is unexcused or unapproved, or when

3

excused but unpaid and unprotected, and as points accumulate, Nissan uses a progressive counseling and discipline system designed to give employees early notice of attendance issues and ample opportunity to correct their behavior before losing their jobs. Thus, Nissan uses the following progressive steps, in order, to address attendance problems: counseling, verbal reminder, written reminder, final written reminder and termination of employment. Kerr explains that under the attendance policy corrective action matrix, employees who accumulate 4 attendance points will normally receive counseling; employees who accumulate 8 points will normally receive a verbal reminder; employees who accumulate 12 points will normally receive a written reminder; employees who accumulate 16 points will normally receive a final written reminder; and employees who accumulate twenty points will normally be terminated. Kerr goes on to explain, however, that there are times when the corrective action issued to an employee does not coincide with the point level for that corrective action step as stated in the Corrective Action Guidelines. He states,

> For instance, if, while management is preparing a Verbal Reminder for an employee who has accumulated 8 points, the employee accumulates enough additional points to receive a Written Reminder under the Corrective Action guidelines, Nissan would typically only issue the Verbal Reminder to the employee, even though the employee's point total has risen to a level which would justify a Written Reminder. The employee would not receive the next step in the corrective action progression until the next incurrence of points and following the issuance of the Verbal Reminder.

4

Kerr explains that for this reason, "[e]mployment discharges for attendance violations at Nissan are determined based upon completion of the progressive corrective action steps, not by the level of points achieved under the attendance system." Thus,

> some Nissan employees can achieve 20 points or more under the system without being terminated, depending on whether at the time they reached 20 or more points, they received a Final Written Reminder for attendance. If the employee has received a Final Written Reminder, the employee will normally be terminated. If the employee has not received a Final Written Reminder, the employee will be issued a Final Written Reminder for attendance, with termination to follow on the next incurrence of points under the Corrective Action Guidelines.

Plaintiff has offered no evidence challenging Kerr's explanation, which consequently stands undisputed in the record. The court therefore considers the evidence relative to plaintiff's and White's attendance and corrective action histories in the light of this explanation of Nissan's policy.

The following evidence is undisputed: On December 6, 2006, Ray received a verbal reminder after accumulating 12 attendance points. He had previously been given 3 points for being tardy on October 18, 2006, 3 points for being tardy on November 14, 2006, 2 points for being absent a portion of the day on November 16, 2006, and 4 points for being absent on December 4 and 5, 2006. After accumulating an additional 3 points for being tardy on May 2, 2007, giving him a total of 15 attendance points, Ray was given a written reminder on May 17, 2007. Subsequently, on June 19, 2007,

5

having accumulated a total of 18 points due to an additional 3 points having been given him for tardiness on June 6, 2007, Ray was issued a final written reminder. Then, on September 10, Ray missed work because he was stranded in California after a weekend trip due to the cancellation of his return flight. Ray was assigned 4 points for this absence, which brought his point total to 22, and he was terminated.

Regarding Eric White, the evidence establishes the following: On April 29, White had accumulated 6 attendance points for a prior attendance problem and was given a verbal reminder. On July 9, he was given an additional 3 points for tardiness, so that his point total was then 9. Subsequently, on August 20, White was given 8 points for being absent from work, bringing his accumulated point total to 17. White was given a written reminder. Then, on September 30, White received 3 points for being tardy. Although that gave him a total of 20 points, he had not previously been given a final written reminder. So, at that point, White was given a final written reminder. When White thereafter received 6 more points for being tardy on December 10 and 12, it was recommended that he be terminated and the termination process began. However, before he could be formally terminated, White resigned.

According to Nissan, the difference between plaintiff's and White's situations is manifest: The timing and reasons for

White's incurrence of attendance points were different from the timing and reasons for Ray's incurrence of points, and that difference in their accumulation of points was such that at the time Ray reached 20 attendance points, he had already been given a final written reminder, whereas at the time White reached 20 attendance points, he had only progressed through the point of a written reminder. His next incurrence of points resulted in his termination.

In his response to Nissan's motion, plaintiff barely acknowledges, much less attempts to refute, Nissan's evidence explaining in detail its method of applying its progressive corrective action system for attendance violations. Specifically, he does not attempt to refute Kerr's explanation that "[e]mployment discharges for attendance violations at Nissan are determined based upon completion of the progressive corrective action steps, not by the level of points achieved under the attendance system," or Nissan's assertion that particular corrective action may or may not be taken when a specific number of attendance points are accumulated, depending on whether each of the steps prescribed by its Corrective Action Guidelines has been taken. Instead, he simply declares that Nissan's "wishy-washy, haphazard, inconsistent, and scattered implementation" of its "may or may not policy" is "an invitation to discrimination" that has "resulted in the discriminatory treatment of Plaintiff." This

7

response is patently insufficient to withstand Nissan's well-supported motion on this issue.

Plaintiff alternatively denies that his absence from work on September 10, 2007 warranted the assessment of attendance points, and denies, therefore, that he violated the work rule which ultimately resulted in his termination. To the point, plaintiff explains that he had received prior approval for his trip to California well in advance of the trip, and that while he planned to be back in time for work on September 10, he was substantially delayed in the security process and missed his flight home, as a result of which he was stranded in California. He immediately called in to work prior to his scheduled time to report to work and explained his situation to his boss, Brian Parker, who allegedly told him, "No problem," and otherwise gave no indication that plaintiff would face any adverse action for being absent. Plaintiff contends that under the circumstances, his absence should have been excused, or that alternatively, he should have been allowed to use eight hours of accumulated unpaid vacation time for that unplanned absence pursuant to a Nissan policy that allows an employee to cover an unplanned absence with vacation time where management has approved this at least 24 hours prior to the absence.

In reply, Nissan points out that under its Corrective Action Guidelines, attendance points are issued on a "no fault" basis,

8

which is to say, subject to reasons expressly defined and set forth in the policy, including pre-approved absences, the reason for an absence is not considered in assigning points for absences. Thus, plaintiff's argument that Nissan should have taken into account the reason for his absence, and the fact that he had no control over his inability to be present for work on September 10, in substance is not an argument that his absence fell into the category of excused absences under Nissan's policy but rather an argument than Nissan should have made an exception to its policy and overlooked his violation of the absenteeism policy. Plaintiff cannot make out a prima facie case on this basis.

The same is true of plaintiff's alternative argument that he should have been allowed to use vacation time for his absence. Under Nissan policy, as explained in Kerry's affidavit, the only circumstance in which an employee may use vacation time for an unplanned absence is where he has received approval to do so at least 24 hours in advance of the absence. Plaintiff does not claim that he had timely pre-approval. Rather, he implicitly suggests that under the circumstances, an exception should have been made to the requirement of 24-hour pre-approval. A contention that the employer should have made an exception to a

work rule is not the same as an assertion that there was no violation of the work rule.[3]

Plaintiff further denies that he was properly given 3 points for being tardy on May 2, 2007, claiming he was tardy only because he was delayed in traffic due to an accident near the Nissan plant and since Nissan has a practice of excusing tardiness where "there's a whole - - a good number of people are late." However, as Nissan notes in its reply, even if this were true, plaintiff has offered no evidence that "a good number of people" were late, or that anyone other than himself was late on that occasion.

In sum, based on the foregoing, the court concludes that Nissan is entitled to summary judgment, and accordingly, it is therefore ordered that Nissan's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 16th day of June, 2009.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[3] The court notes, too, that plaintiff has offered no evidence that Nissan failed to make such allowances of exceptions for similarly situated employees outside plaintiff's protected class.